UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES MUHLENHAUPT, | No.  2:19-cv-1502-EFB |
| Plaintiff, | |
| v. | ORDER |
| ANDREW SAUL, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and Disability Insurance Benefits ("DIB") under Titles II of the Social Security Act.  The parties have filed cross-motions for summary judgment.  ECF Nos. 16 & 18.  For the reasons discussed below, the Commissioner's motion for summary judgment is granted and plaintiff's motion is denied.

I.   Background

In October 2011, plaintiff filed an application for a period of disability and DIB, alleging that he had been disabled since February 17, 2011.  Administrative Record ("AR") 187-93. Plaintiff's application was denied initially and upon reconsideration.  *Id.* at 91-95, 97-101.  After holding a hearing, administrative law judge Michael Blume ("ALJ Blume") issued a decision finding that plaintiff was not disabled under section 216(i) and 223(d) of the Act.  *Id*. at 12-24. Plaintiff sought review with the Appeals Council, which denied review.  *Id*. at 1-6.

Plaintiff then sought judicial review from this court.  On March 30, 2017, the court approved the parties' stipulation for voluntary remand and ordered the case remanded for further administrative proceedings.  *Id*. at 571-72.

On remand, another administrative hearing was held, this time before administrative law judge Carol A. Eckersen (the "ALJ").  *Id*. at 33-61.  On August 21, 2018, the ALJ issued a decision finding that plaintiff was not disabled under section 216(i) and 223(d) of the Act.  *Id*. at 459-74.  The ALJ made the following specific findings:

1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2017.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of November 7, 2011[, through the date last insured] (20 CFR 404.1571 *et seq*.).

* * *

3. Through the date last insured, the claimant had the following severe impairments: major depressive disorder, generalized anxiety disorder, ADHD, and personality disorder (20 CFR 404.1520(c)).

* * *

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

* * *

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: capable of understanding, remembering, and carrying out simple repetitive tasks; can sustain attention, concentration, persistence, and pace for simple repetitive tasks in 2-hour segments with usual breaks; no work in proximity to the public or interacting with the public; can work in proximity to coworkers but not in coordination; can have occasional interaction with supervisors; and can adapt to change and stress consistent with the entry level work or simple repetitive tasks.

* * *

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

\* \* \*

7. The claimant was born [in] 1958 and was 58 years old, which is defined as a younger individual closely approaching advanced age, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

\* \* \*

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from February 17, 2011, through the date of this decision [sic] (20 CFR 404.1520(g)).

*Id.* at 459-74.

Plaintiff subsequently filed written exceptions to the ALJ's decision, but the Appeals Council declined to exercise its discretion to assume jurisdiction.[1] Accordingly, the ALJ's August 31, 2018 decision is the final decision of the Commissioner. 20 C.F.R. § 404.984(a).

II.   Legal Standards

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

/////

---

[1] Once an ALJ issues a decision after remand from the district court, the plaintiff has 30 days to file exceptions with the Appeals Council, requesting the Appeals Council review the ALJ's decision. 20 C.F.R. § 404.984(b). If the Appeals Council finds no basis for changing the ALJ's decision, it is required to issue a notice addressing the claimant's exceptions and explaining why no change is warranted. 20 C.F.R. § 404.984(b)(2). "In this instance, the decision of the administrative law judge is the final decision of the Commissioner after remand." *Id.*

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III. Analysis

Plaintiff sole argument is that the ALJ erred in evaluating the medical opinions addressing his mental functioning. ECF No. 16. The court is not persuaded, for the reasons set forth below.

A.      Relevant Background

The record contains several opinions proffered by five different sources. In July 2014, Dr. Ronald Leon, plaintiff's treating psychiatrist completed a mental impairment questionnaire. AR 440-445. Therein, Dr. Leon opined plaintiff was seriously limited, but not precluded, in maintaining attention for two-hours, maintaining regular attendance and being punctual, sustaining an ordinary routine without special supervision, completing a normal workday and workweek without interruption from psychologically based symptoms, performing at a consistent pace without an unreasonable number of breaks, getting along with coworkers, and responding appropriately to supervisors and changes in work setting. *Id*. at 444-45.

Around the same time, Dr. Leon also drafted a letter stating that plaintiff was unable to maintain focus over an eight-hour day even for simple and highly routine tasks. *Id*. at 439. He also stated that if plaintiff were to perform a simple, repetitive job, he would become inattentive, make mistakes, procrastinate, and "not get the job done." *Id*. To illustrate that opinion, Dr. Leon explained that plaintiff is "so distractible that within minutes on an assembly line job items will

1   have backed up and then his panic disorder would in turn cause him to leave the work setting due
2   to concern over his poor performance." *Id*.

3   Dr. Leon completed another mental impairment questionnaire in April 2017. AR 802-04.
4   At that time, he concluded plaintiff had no more than marked limitations in making simple
5   decisions and understanding, remembering, and carrying out very short and simple instruction.
6   *Id*. at 804. Dr. Leon further opined that plaintiff had marked limitations in asking simple
7   questions, performing at a consistent pace, and sustaining an ordinary routine. In all remaining
8   functional areas, Dr. Leon found plaintiff had extreme limitations.[2] *Id*.

9   Plaintiff's treating psychologist, Dr. Carl Viesti, Ph.D., completed a mental disorder
10  evaluation form, which is not dated. *Id*. at 363-65. That form indicates that plaintiff had a poor
11  ability to understand, remember, carry out complex instruction, and maintain concentration,
12  attention, and persistence; a fair ability to respond to changes in a work setting, complete a
13  normal workday or workweek without interruption from psychologically based symptoms, and
14  understand, remember, and carryout simple instructions. *Id*. Dr. Viesti also indicated that
15  plaintiff had a good ability to perform activities within a schedule. *Id*. at 365.

16  In March 2014, Dr. Viesti completed a mental impairment questionnaire. *Id*. at 435-38.
17  Therein, Dr. Viesti stated that plaintiff's mental impairments precluded him from meeting
18  competitive standards in sustaining an ordinary routine without supervision, working in
19  coordination with or proximity to others without being distracted, getting along with coworkers
20  without distracting them, making simple work-related decisions, and completing a normal
21  workday or workweek without interruptions from psychologically based symptoms. *Id*. at 437.
22  Dr. Viesti also concluded that plaintiff was seriously limited, but not precluded, in carrying out
23  very short instructions, maintaining regular attendance and being punctual, accepting instruction
24  and responding appropriately to supervisors, and responding appropriately to changes in a routine
25  work setting. He also determined plaintiff's abilities were limited, but satisfactory, in the
26  following areas: remembering work-like procedures; understanding, remembering, and carrying

---

[2] The questionnaire defined "extreme" as not able to function on a sustained basis and "marked" as seriously limited in ability to function on a sustained basis. AR 803.

out simple instructions; maintaining attention in two-hour segments; performing at a consistent pace without an unreasonable number of breaks; and asking simple question or requesting assistance. *Id*. at 437-38.

In early 2018, examining psychiatrist Dr. Kulwant Singh, M.D. performed a psychiatric evaluation. AR 749-52. Based on his evaluation, Dr. Singh stated that it did not appear plaintiff was suffering from a major mental disorder. He concluded that plaintiff could perform detailed and complex tasks, accept instructions from supervisors, interact with coworkers and the public, perform work activities on a consistent basis with special instructions, maintain regular attendance, and deal with usual stress encountered in the workplace.

Two non-examining physicians also provided opinions concerning plaintiff's mental functioning. Dr. Jacobs opined that plaintiff could sustain concentration, persistence, and pace for simple and detailed, but not complex, tasks, but he would require a work setting with low social demands. AR 71-72. Dr. Randall Garland concluded that plaintiff could meet the demands of unskilled work on a sustained basis, particularly in settings with low social contact. He opined that plaintiff could understand, carry out, and remember simple instructions and make judgments commensurate with the functions of unskilled work, including making simple work-related decisions, responding appropriately to supervision, coworkers, and work situations, and dealing with changes in a routine work setting. *Id*. at 85-86.

B.   Discussion

In her decision, the ALJ credited Dr. Jacobs and Dr. Garland's opinions with "great weight," while Dr. Singh's opinion was given "some weight" and Dr. Leon and Dr. Viesti's treating opinions were assigned "little weight." AR 469-70. To reject Dr. Leon and Dr. Viesti's opinions, which were contradicted by the other opinions in the record, the ALJ was required to provide specific and legitimate reasons that were based on substantial evidence in the record. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

The ALJ rejected Dr. Leon's opinions and Dr. Viesti's opinions for the same reasons. First, the ALJ observed that both provided inconsistent opinions regarding plaintiff's functional limitations. AR 467, 469. An ALJ may reject a treating doctor's opinion where it contains

inconsistencies. *See Margan v. Comm'r Soc. Sec.*, 169 F.3d 595, 603 (9th Cir. 1999) (inconsistency in physician's reports is a legitimate basis for rejecting treating opinion); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ did not err in rejecting various statements by treating physician because they were internally inconsistent).

As observed by the ALJ, the various treating opinions assessed limitations that conflicted in severity in functional areas. For instance, Dr. Leon stated in the July 2014 questionnaire that plaintiff's ability to maintain attention for two hours, sustain a normal routine, and perform at a consistent pace was seriously limited, but not precluded. AR 444. But in his letter from the same month, he stated that plaintiff "is so distractible that within minutes" of working on an assembly line items would back up, causing plaintiff to leave. *Id*. at 439. The latter statement reflects, at the very least, an inability to meet competitive standards,[3] which is not consistent with Dr. Leon's other opinion stated the same month that plaintiff's ability to perform at a consistent pace was "seriously limited, but not precluded." Dr. Leon also concluded in 2014 that plaintiff's ability to ask simple questions or request assistance was satisfactory (*id*. at 445), which contradicts his 2017 opinion that plaintiff was markedly limited in the same functional area (*id*. at 804). Likewise, Dr. Viesti stated on the undated evaluation form that plaintiff has a good ability— defined as "not significantly limited"—to maintain activities within a schedule and maintain regular attendance. *Id*. at 365. Conversely, his 2014 questionnaire provides that plaintiff's ability to maintain regular attendance and be punctual was seriously limited, but not precluded.

Plaintiff argues that the discrepancies between the 2014 and 2017 opinions are attributable to functional changes during the intervening years. ECF No. 16 at 10. While plaintiff's logic would otherwise be sound, it ignores Dr. Leon's 2017 statement that the severity of plaintiff's limitations, as reflected in his opinion, have existed since 2008. AR 804. Accordingly, the ALJ properly found that the treating opinions were inconsistent.

/////

---

[3] The questionnaire stated: "unable to meet competitive standards means your patient cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting." AR 444.

The ALJ also found that Dr. Leon and Dr. Viesti's extreme opinions were inconsistent with their own treatment notes. In reaching this finding, the ALJ observed that plaintiff's treatment records contained virtually no objective medical findings that could support the severity of the treating opinions. An ALJ may reject a treating opinion where the physician's inconsistent with other medical evidence, including the physicians own treatment notes. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ may reject a treating physician's opinion that is inconsistent with other medical evidence, including the physician's own treatment notes); *see also Rollins*, 261 F.3d 853 at 856 (ALJ properly may reject treating physician's opinions that "were so extreme as to be implausible and were not supported by any findings made by any doctor ...").

As observed by the ALJ, the extreme limitations assessed by Dr. Leon and Dr. Viesti find little to no objective support from these providers' treatment notes. Dr. Leon's treatment notes from the alleged onset date through March 2016 contain no objective findings. Instead, each of plaintiff's appointments is memorialized by two to three brief statements, such as "doing well on current meds" or "No S/E." *See* AR 383-87, 425-432, 737-738. Subsequent treatment notes do include objective findings from mental status examinations, but the findings are consistently normal. *Id*. at 719-736. Dr. Viesti's notes, while marginally more detailed than Dr. Leon's, contain no objective findings.[4] *Id*. at 337-62.

Lastly, the ALJ concluded that the treating opinions were entitled to little weight because they were based solely on plaintiff's subjective complaints, which the ALJ determined to be not fully credible.[5] *Id*. at 468-69; *see Tommasetti*, 533 F.3d at 1041 ("An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible."). The ALJ reasoned that the opinions' extreme limitations must have been based on plaintiff's subjective complaint given the absence of supporting objective findings. As detailed above, Dr. Leon and Dr. Viesti's treatment notes failed to document any abnormal observations or other objective findings, much less findings that could

---

[4] The only exception is a reference to plaintiff's height and weight. AR 338.

[5] Plaintiff does not challenge the ALJ's credibility determination.

support their extreme limitations.  Accordingly, the ALJ reasonably concluded that their opinions were based on plaintiff's subjective reports.  *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (the court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

Accordingly, the ALJ provided specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Leon and Dr. Viesti's opinions.

IV. Conclusion

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. The Commissioner's cross-motion is granted; and

3. The Clerk is directed to enter judgment in the Commissioner's favor and close the case.

DATED: September 30, 2020.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE